Good morning. May it please the court, counsel. My name is Jamesa Drake here on behalf of Mr. Lopez-Ortiz and I would respectfully request two minutes of rebuttal time. You may have it. The misallocation of burdens is a grave error. It alters the lens through which the district court evaluates all of the evidence and any resulting factual findings are necessarily contaminated by this defective lens. Could I understand what we're applying the burden to here? Is there any claim at all that the defendant did not fail to show up on three times for his drug tests, use marijuana, and not tell the probation officer that he had moved and left the mental health treatment facility? No, Your Honor. And just as a factual matter, isn't it true that at least one of the failure to appear for the drug testing occurred before he even met with his probation officer who testified and before he underwent the drug testing? Yes, two of them. And those two are sort of automatically violations of the terms of probation? They are if the court concludes, and this is the operative language in the statute, that the defendant refused to submit to drug testing, which begs the question that was at issue in this case, which is whether… Yes, what is the question? Were you arguing mitigation or were you arguing – you never used the language that he lacked the mens rea to do this. You never made the argument, as best I can tell, to the district court that you're now making to us. On appeal, you seem to be making a mitigation argument. Is that what you're referring to when you use the term voluntary? Not necessarily. You've got to commit yourself. Well, our primary argument is that because the lens was distorted, because the burdens were misallocated, all of the factual findings are legally infirm. As to what? Please answer my question. Make a commitment. As to the two issues that were before the court, which was whether to continue or revoke supervised release, and then if the decision was to revoke, what sanction to impose, we believe that the erroneous allocations of burdens impacted both of those decisions. Go ahead. If there's no dispute about the acts, the four basic violations, then it seems to me the only possible defense would be to whatever the mens rea element is of the charge. Beyond that, you're simply talking about mitigation, which would seem to be something that you would bear the burden of establishing. So it seems to me you really need, if you're going to convince us, that in response to Judge Lynch's question, you really have to provide some analysis of why the defense that you put on, or would have put on, or that the government failed to prove, goes to the mens rea element. And as I read the brief, you're suggesting voluntariness is something that the government need prove. That strikes me as unusual. I can see they have to prove knowing, but why do they have to prove voluntariness? I have a two-part response, and the first begins with my use, or perhaps the court's use, of the word mitigation. The district court's discretion in this arena is very broad, and so I fold within, or perhaps we should fold within the definition of mitigation, the preliminary decision of whether to revoke or continue in the first place. I would deem the decision to continue to be, perhaps that is fairly considered mitigating. And so as long as we are on the same page with that, the fact that the government has to establish is that the defendant had refused, and the argument that was made below, and is renewed here, is that he, in fact, did not refuse to participate in mental health treatment or to submit to drug testing, or any of that, as a result of his willful disobedience. Excuse me, the psychiatric report, which I assume you're relying on to make this argument, is that correct? It's that, also the testimony of the probation officer. Okay. Did either one of them ever say that, on their view, he had not refused? The expert witness The expert doesn't say anything like that. The expert finds that he's competent, but finds that his decision-making may have been impaired by certain events, including events that took place after he had already violated probation. She does say that the beating was part of it. She also says, though, that it could be a product of his cognitive limitations and his mental illness. Yes, but she doesn't draw the conclusion. She never draws the conclusion that you're asking us to find was a necessary conclusion. Because, otherwise, I don't see how there was any error here, much less harmless error. I know the government has conceded, but that's a different question we can talk to the government about. I'm not sure I think there's any error, much less that you have met your burden of showing that you were prejudiced. Well, let me address that. What the expert says is what the probation officer says, which is there is a documented history of cognitive limitations and mental illness that pre-exists his failure to appear. Let's put a sharper point on that. Are you saying that there's, are you contesting that he knew that he was engaging in the acts which are undisputed here? In other words, that he knew he wasn't appearing for the drug tests, he knew he used marijuana, he knew that he didn't tell the probation officer that he moved, and so on. I didn't read anything in the expert report. Your brief is suggesting that he didn't know he was doing those things. That's correct, and I don't think I can make that assertion on this record. So then, imagine the government had put on a case that had established these are the acts that he did, and he knew it, and then rested at that point, and you put on no evidence. Wouldn't the government have fully carried its burden of proof on all respects? Yes. And then what's different here is that you, instead of being silent, you have put on not a challenge to the actus reus, not a challenge to knowingness, but a sort of challenge that he was compelled and injured in some way and unable to resist doing these things. That seems to me to be mitigation. I mean, what if we had a drug addict who, a condition of release was not supposed to use drugs, and he does, are you saying he would get off? If I may? Yes, you may. I think it's fine if this Court wants to call that mitigation. The example that I sort of use in my head is, imagine he was unable to appear because he was in a car accident, and he was hospitalized. If that's mitigating, then that's fine, but at the end of the day, it goes towards the fundamental question that was before the Court, which is whether to revoke or continue, and what sanction to impose. So does it go towards your argument that seems to be shaping up here that that's what you meant by the government having to demonstrate refusal, and refusal is tied to voluntariness in that regard? That's right. Once the defendant raised a question as to whether or not his conduct was the result of his willful disobedience, or as a result of his mental illness and cognitive limitations, then the Court had evidence to weigh, to consider what the next step should be. Our argument is that because the Court misunderstood the burdens that necessarily impacted the district court's decision-making in terms of whether to revoke or what sanction to impose, and we're asking this Court to simply remand so the Court can reevaluate the evidence using the proper burden. Ms. Drake, I've got a pragmatic question. At this hearing, it became quite clear that the psychiatric expert was recommending to the judge that your client go into treatment, right? And that treatment, in fact, the judge recommended that he be sent to Butner, New York. Your client also made it clear if he were sent back to prison, he didn't want to be in Puerto Rico. He believes somehow his enemies will get to him in Puerto Rico. So the judge also takes care of that and makes this strong recommendation. So in many ways, what the judge did here was exactly what your client asked for. He's going to get psychiatric treatment. He's not going to be in Puerto Rico. Did you, I just want to be sure that this appeal, you've talked to your client about these consequences and that he agreed that you should go forward, nonetheless, and go into treatment. I will confess to the Court that I've had a great deal of difficulty getting in touch with my client. But I feel confident in saying... I'm sorry, the answer then is no, you have not had a discussion with your client about this. I have not. I believe, though, that our position is consistent, which is there is a... I'm sorry, you've answered my question. I'm not sure... I'm not sure what I'm going to do with that information. I think we need to... Are you saying that you haven't had a chance to discuss this appeal at all with your client? No, Your Honor. I have had a great deal of difficulty arranging for an interpreter and translation. The client is aware of the brief and we have corresponded by writing. We have not addressed this specific question of whether he would prefer to be in Butner or be back in Puerto Rico because I assume that his position has remained unchanged. He is very clear that he feels his life is threatened in Puerto Rico. Cut to the chase here. Is your client aware that you are arguing on appeal that his reincarceration under the terms ordered should be set aside because of the burden issue? Yes. Okay. I do think, excuse me, that I'm going to direct counsel for the government. to assist you in having a conversation with your client about this point. And you will report back to us within two weeks, a joint report, and you will let us know whether it's your client's preference that this appeal continue or not. Yes, Your Honor. Thank you. Okay. I appreciate that. And is there any difficulty with this direction? No, Your Honor. All right. All right. Thank you. Thank you. Would you still like to hear from me? Yes. Yes. Good try, though. Sure, you could start by telling me why the government did not correct the court, or at least bring to the court's attention that it was not the defendant's burden to go forward with this hearing. Yes, Your Honor. I can't speak for exactly what was in the prosecutor's mind at that time. But I do think from the record, given the way the case had shaped up as a whole, that a reasonable prosecutor could have understood that the judge was viewing the evidence that was about to be presented as mitigation evidence, and that that burden does rely on the defendant. However, at the appellate level, when we were reviewing the record, it seemed that the discussion of what the burden was, or the admission that the acts were committed, was not clear on the record. Which is why we decided to concede the error, and not argue that it should purely be interpreted as that the judge was discussing the burden of providing mitigation evidence. We don't always accept the government's concession of error, because more than a few occasions, this court has found it simply to be the government's concession to be wrong. But let's assume, hypothetically, that this experienced trial judge did not know that the burden of proving revocation was, by statute, on the government. That then does raise Judge Thompson's question about the responsibility of the prosecution to make clear on the record that the burden of proving revocation was by statute on the government. And then to the district court judge that it bears the burden on that issue. Let's make that assumption. Then, what is your argument that any error was harmless, and what is the standard by which we are to judge that harmlessness? Sure, Your Honor. So, first, the harmlessness arises from simply the evidence that came out as a result of that assumed burden shifting. So the defense then, rather than the government, called the probation officer. And I do want to note that they weren't directed to call the probation officer. They could have chosen not to. It became clear through the testimony that there were some facts that they wanted to draw out from the probation officer, which were positive for the defendant. Okay, so you're saying to the extent there was any doubt about whether he had violated the terms of supervised release, the fact that they called the probation officer who provided that testimony eliminated that? Correct. All right. Now, moving on to mitigation. Do we agree that the burden on mitigation is not on the government? Yes, Your Honor, we do. All right. Then, what's your argument on that point? So the argument is that the court clearly took account of the mitigation evidence and listened very carefully to what the expert had to say. He stated that he was very impressed with that, questioned her about whether the goals of rehabilitation could be served in a prison setting if the defendant could get the care that he needed. And I think it's important to point out that she said he needed inpatient treatment under restrictive conditions. So regardless of what the defendant might have in other instances said he wanted, his expert recommended inpatient treatment. I would also like to note that when we're discussing the... There's a difference between inpatient treatment in a penal institution and inpatient treatment in a hospital. Yes, Your Honor, but the judge specifically asked the expert if that kind of care could be received in prison. And she said as long as the prison has sufficient facilities. And then we see when the government... Excuse me. When the court actually pronounces sentence he makes a strong recommendation that the defendant be placed in a specific institution that he believed had those facilities. What do you say to the defendant's argument that the type of psychological impairments evidenced here precluded him from voluntarily... From refusing to comply with the terms of his supervised release? Your Honor, in response I think it's important to note that that paranoia, even according to the defense's expert, was at least partially self-inflicted by the consumption of synthetic marijuana. And there's no... She doesn't conclude that he involuntarily consumed the synthetic marijuana. Do you agree that the government bore the burden of proving that he refused to comply with the terms of his release as opposed to just did not comply? Yes, the language of the statute says refuse to comply. And so then what do you say about the notion that we should read into refuse some element of voluntariness? To whatever extent there is an element of voluntariness, it was met in this case for a couple of reasons. First, the probation officer testified that he spoke to the defendant and the defendant understood what he had to do. As Your Honors noted previously, at least two of the violations took place before the alleged beating occurred. So it wasn't in response to that that he was failing to show up for these testing, the drug testing. In addition, as I said, the decision to consume synthetic marijuana was a voluntary one. Are you conceding that you can't involuntarily refuse to do something? Sorry, I'm just trying to parse that out. You cannot, sure, yeah, a refusal does have an element of voluntariness. But we would say that voluntariness is not negated by, for instance, the decision to consume synthetic marijuana. But is it negated by his cognitive disabilities coupled with his mental disabilities? That's possible, but it's telling that that's not what the defense expert said. She said these things in combination. And similar to the previous argument, when something rests on several pillars, I believe it can be difficult to say that two or one by itself is sufficient. So these conditions of supervised release, which included the showing up for the drug testing, they were imposed earlier. During that earlier proceeding, did he argue, gosh, my mental state and paranoia is so strong that I should not be held to these conditions of supervised release because I have no way of complying? No, no, Your Honor. Okay, so that argument was not made, and it certainly was not made the second time around. Right. If Your Honors have no further questions. Thank you. You have two minutes. Thank you, Your Honor. This exchange, I think, clarifies, at least for me, where we got hung up on the term mitigation. If we accept that the statutory language of refusal embodies some degree of voluntariness, then what we are left with is a record that is replete with evidence that the defendant's failure to comply was due to things that were largely beyond his control, his cognitive problems and his mental health issues. And because the burden was misallocated, our position is that the court didn't properly consider that the defendant's failure to comply was due to things that were largely beyond his control, his cognitive problems and his mental health issues. And so we have to reconsider how that evidence worked in the defendant's favor. Here's the problem. You twice asked, you were trial counsel? I was not, Your Honor. Okay. Trial counsel twice after the judge imposed the sentence said, Your Honor, we'd like you to reconsider, and we'd like you to reconsider in light of our voluntariness argument. And the judge says, essentially, I understood the argument, but I'm not going to reconsider. I took account of the testimony of the psychiatrist. So, again, what's the harm? The judge expressly says, I took account of this argument. He did. I would go one step further. He comments that he's impressed by it, and he seems to credit the notion that, in fact, the defendant suffers from mental illness, because that's reflected in the way that he structured the sanction that he ultimately imposed. Our position is that had the court understood that those facts inured to the defendant's benefit, because he did not have the burden to prove a negative, then the result may well have been a negative. I'm sorry. He didn't have the burden to prove a negative? What do you mean? If I may, it was not his burden to prove that he did not violate. It was his burden to prove that he should be given a lesser sentence or no sentence because of these conditions, if the government had proved a violation, correct? Yes, when we get to the sanction question, but when we're focused on the question of whether he refused. Thank you. You all talk to each other afterwards, please.